IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RALPH EDWARD CAVE,  §<br>  PLAINTIFF,  §<br>  §<br>VS.  §<br>  §<br>COMMISIONER,  §<br>SOCIAL SECURITY,  §<br>  DEFENDANT.  §  | CIVIL ACTION NO. 3:24-CV-00094-BJ |

## MEMORANDUM OPINION AND ORDER

### I.  STATEMENT OF THE CASE

Plaintiff Ralph Edward Cave ("Cave") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").  On October 6, 2021, Cave protectively applied for DIB, alleging that he became disabled beginning February 5, 2021.  (Transcript ("Tr.") 14; *see* Tr. 200-201.)  After his application for benefits was denied both initially and on reconsideration, Cave requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 113-114.)  The ALJ held a hearing on June 7, 2023, and issued an unfavorable decision on August 16, 2023.  (Tr. 14-29; *see* Tr. 36-59.)  On November 14, 2023, the Appeals Council denied Cave's request for review, leaving the ALJ's decision as the final decision of the Commissioner of this case.  (Tr. 1-6.)  Cave subsequently filed this civil action seeking review of the ALJ's decision.

### II.  STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* of the SSA.  In addition, numerous regulatory provisions govern disability insurance benefits.  *See* 20 C.F.R. Pt.

404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial or gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience. *Id.* §§ 404.1520(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At Steps One through Four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

    A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence

in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla of evidence, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[1]

### III.  ISSUE

In his brief, Cave presents the following issue: whether substantial evidence supports the ALJ's finding that Cave has no severe mental impairment(s). (Plaintiff's Brief ("Pl.'s Br.") at 1.)

### IV.  ADMINISTRATIVE RECORD

In his August 16, 2023 decision, the ALJ found that Cave had met the insured status requirements of the SSA through December 31, 2025, and had not engaged in substantial gainful activity since February 5, 2021, the alleged date of the onset of Cave's disability. (Tr. 16.) At Step Two of his analysis, the ALJ found that the medical evidence of record established Cave had the following severe impairments: "cervical and lumbar spine degenerative disc disease; lumbar radiculopathy; and obesity." (Tr. 16.) However, as to Cave's mental impairments, the ALJ stated that there were "no objective findings in the medical records to support the severity"

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

3

of "symptoms relating to depression disorder, anxiety disorder, PTSD, left upper extremity neuropathy, and migraines." (Tr. 19.) The ALJ, thus, found that Cave's mental impairments were not severe at Step Two. (Tr. 19-21.) At Step Three, the ALJ found that Cave did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 21-23.) As to Cave's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift, carry, push, and/or pull twenty pounds occasionally and ten pounds frequently; sit for six hours and stand/or walk for two hours out of an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl.

(Tr. 24 (emphasis omitted).) Based on this RFC assessment, the ALJ concluded that Cave was not able to perform his past relevant work. However, at Step Five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Cave could perform. (Tr. 28-29.) Thus, the ALJ found that Cave was not disabled. (Tr. 29.)

## V.   ANALYSIS

As set forth above, Cave's sole issue is that the ALJ erred in finding that Cave did not have a severe mental impairment at Step Two. (*See* Pl.'s Br. at 1, 7-11.) Cave argues that the ALJ's decision mirrored the "same error the Fifth Circuit addressed in *Salmond v. Berryhill*, 892 F.3d 812 (5th Cir. 2018)[,]" by rejecting the medical experts' consensus that Cave suffers from severe mental impairments that interfere with his ability to work. (Pl.'s Br. at 7.) Cave claims that, like the ALJ's erroneous Step Two decision in *Salmond*, the ALJ's finding at Step Two that Cave did not suffer from a severe mental impairment is contrary to every medical opinion of record. (Pl.'s Br. at 7.) Cave also argues that all the medical professionals who evaluated Cave, including three state psychologists paid for by the Social Security Administration, "unanimously agreed that Cave's mental health impairments moderately limit Cave's ability to understand,

4

remember or apply information as well as his ability to concentrate, persist, or maintain pace." (Pl.'s Br. at 8). Cave states that his physicians considered Cave to be "very depressed," (Tr. at 420), anxious, and tearful (Tr. at 451). (Pl.'s Br. at 9.) In addition, Cave claims that he was assessed or diagnosed with major depressive disorder (*see* Tr. 455, 588, 594), prescribed medication (Tr. at 371, 552), and undergoing treatment for depression and anxiety. (Pl.'s Br. at 9). Cave further states that testing and Neena Patel, M.D. ("Dr. Patel"), confirmed that he suffered from depression and that "his suicidal ideation was sufficiently credible to warrant a referral to crisis care." (Pl.'s Br. at 9; *see* Tr. 454-55.)

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104-05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: an impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101; *see Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (reaffirming *Stone*).

The Court notes that federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. §

404.1520a(b)(1); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1). For most mental impairment Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A and B or A and C of the adult mental disorders contained in the Listings.[2] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A; 20 C.F.R. §§ 404.1520a(b)(2) & (c). "Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.[3] 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder in the Listing. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3).

---

[2] "Listing 12.05 has two paragraphs that are unique to that listing (see 12.00A3) . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.2.

[3] These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.00A.2.b, 12.00E. The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (*see* §404.1522)." 20 C.F.R. § 404.1520a(d)(1).

6

As set forth above, the ALJ found at Step Two that Cave's mental impairments were not severe. (Tr. 16, 19.) In making such a determination, the ALJ analyzed the evidence in the record, stating:

> The claimant also had symptoms relating to a depression disorder, anxiety disorder, PTSD, left upper extremity neuropathy, and migraine. These impairments are non-severe. There are no objective findings in the medical records to support the severity of these impairments or findings that these conditions present any severe functional limitations or that they meet the durational requirements. The medical records did not show that these impairments, singly and in combination, interfere with the claimant's ability to perform basic work activities. They are, therefore, non-severe.
>
> . . . .
>
> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria.
>
> . . . .
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non-severe.
>
> . . . .
>
> At the initial level on March 30, 2022, Walt Mercer, Ph.D. concluded that the claimant can understand, remember, and carryout only simple instructions, make decisions, concentrate for extended periods, interact with others, and respond appropriately to changes. Gerald Gardner, Ph.D. reached the same conclusion at the reconsideration level on November 11, 2022. These opinions are not persuasive because they are not consistent with the evidence received at the hearing. The claimant sought scant mental health treatment. The mini-mental status exams typically show the claimant to have a normal mood, affect, insight, and judgement.
>
> Psychiatrist Patel states that the claimant's prognosis was fair to guarded with psychiatric treatment. Psychiatrist Patel gave a "functional capacity" statement, but it was prefaced with the following: "This is based on the report given by the examinee." The claimant is unable to manage benefit payments in his own interest. He is able to understand the meaning of filing for benefits. The

> statement with regard to the claimant's "functional capacity" is not persuasive because it is merely a repetition of what the claimant alleges and is not an opinion based on psychologist Patel's examination of the claimant. The remainder of psychologist Patel's opinion is not persuasive because it is vague with regard to work-related limitations. Furthermore, it is not consistent with evidence received at the hearing. The claimant's mini-mental status exams have showed the claimant to have a normal mood, affect, insight, and judgment. Furthermore, the claimant has sought little mental health treatment during the relevant period. During this period there is nothing to indicate that the claimant presented to an emergency department or mental health facility complaining of acute psychological symptoms.

(Tr. at 19-20, 26 (internal citations omitted) (emphasis in original).)

After reviewing the parties' arguments, the ALJ decision, and the transcript, the Court agrees with Cave that the ALJ's decision at Step Two as to Cave's mental impairment is not supported by substantial evidence. As noted by Cave, and like the claimant in *Salmond*, every single medical opinion of record discussed by the ALJ confirmed that Cave more than satisfied the ***de minimis*** standard at Step Two of having an impairment that, at the very least, would be expected to minimally interfere with his ability to work. The State agency medical consultants ("SAMCs") unanimously characterized Caves mental disorders, which include "Schizophrenia Spectrum and Other Psychotic Disorders, Depressive, Bipolar and Related Disorders, and Anxiety and Obsessive-Compulsive Disorders" as severe. (Tr. at 64, 77.) Moreover, because the SAMCs found Cave's mental impairments were severe at Step Two, they also formulated a mental RFC determination that "[Cave] can understand, remember, and carry out only simple instructions, make decisions, concentrate for extended periods, interact with others, and respond appropriately to changes in routine work setting." (Tr. at 69, 83.)

In addition, Dr. Patel, the psychiatric consultative examiner, also diagnosed Cave with "Major Depressive Disorder recurrent, severe with psychotic features." (Tr. 455.) Dr. Patel then stated that Cave's prognosis was "fair to guarded with psychiatric treatment" and set forth a

8

mental RFC determination that placed limits on Cave's ability to perform in the workplace. (Tr. 455). While the ALJ attempts to discount Dr. Patel's opinions as being based on information provided by Cave (Tr. 26), every physician that was asked to provide an opinion on the issue indicated Cave's mental impairments were severe as they would, at the very least, minimally interfere with his ability to work. Furthermore, although the ALJ claims that Cave "sought scant mental health treatments" (Tr. 26), the SAMCs and Dr. Patel noted that Cave was on a waiting list to obtain mental health treatment. (*See* Tr. 63, 452.) While the ALJ also noted that there were periods of time in which "claimant has sought little mental health treatment" (Tr. 26), Cave testified at the hearing before the ALJ that he "ha[d] reached out to several people, [but] they do not accept [his] insurance." (Tr. 44.)

While the Court is not suggesting that Cave will be successful in his quest for DIB, the ALJ erred in not finding at Step Two that Cave had severe mental impairments and completing the five-step process for the mental impairments. Although the ALJ proceeded past Step Two for Cave's physical impairments, he did not proceed past Step Two for his mental impairments; thus, the error is not harmless and, consequently, remand is required. *See, e.g.*, *Self v. Colvin*, No. 13-716-SDD-SCR, 2015 WL 4656696, at *6 (MD. La. Aug. 5, 2015) (finding, *inter alia*, that lack of substantial evidence to support the ALJ's findings at Step Two was not harmless error).

As noted by the Fifth Circuit in *Salmond,* "[t]his is not a case in which the treater disagrees with the examiner." *Salmond*, 892 F.3d at 818. Instead, "all of the medical professionals in this record agree that [Cave's] symptoms would be expected to interfere with his ability to work." *Id*. While the Court is careful not to reweigh the evidence or substitute its judgment for the ALJ, a "finding of no substantial evidence is appropriate only if no credible

evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 782, 779 (5th Cir. 2016).  In this case, the record does not support the ALJ's decision. "Even though the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion, the issue here is there is insufficient evidence to support the ALJ's conclusion.  *Salmond*, 892 F.3d at 819 (internal quotations marks and citations omitted). Consequently, the ALJ's decision is not supported by substantial evidence and remand is required.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is **REVERSED and REMANDED** for further administrative proceedings consistent with this order.

SIGNED June 26, 2024.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE